**Adam HOLMES, by his mother and next friend, Nora HOLMES, on behalf of himself and all persons similarly situated, Plaintiff,**

**v.**

**Thomas SOBOL, in his official capacity as New York State Commissioner of Education; the New York State Education Department; and the Board of Education of the Rochester City School District, Defendants.**

**No. Civ. 88–541L.**

United States District Court,
W.D. New York.

July 5, 1988.

State Commissioner of Education, the New York State Department of Education and the Board of Education of the Rochester City School District seeking declaratory and injunctive relief pursuant to the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.* (1982) (EHA or Act) and the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982, Supp.1987).

Plaintiff seeks relief requiring defendants to provide him with physical therapy services as part of his Individualized Education Program (IEP) on a twelve-month basis. Defendants have declined to provide these services over the summer.

Additionally, on behalf of himself and all other handicapped students in New York, plaintiff seeks: (1) a declaratory judgment that the State's procedures for conducting reviews in cases arising under the EHA violate the federal statute's impartiality requirement, and (2) an injunction requiring that the State defendants comply with the federal mandate.

Plaintiff now moves for a preliminary injunction mandating that defendants continue to provide him with physical therapy as required by his IEP on a twelve-month, rather than a ten-month, basis during the pendency of this action. Plaintiff's motion is granted.

## PROCEDURAL BACKGROUND

Adam Holmes is an eleven-year old severely physically handicapped boy who suffers from a birth defect known as Caudal Regression Syndrome. This defect causes his legs to fold up beneath his body. He has no control of the muscles in his lower extremities and little to no sensation in them. In order to ambulate he wears a bucket prosthesis and uses "gator-aide" crutches and a light weight wheelchair. Adam's continued use of the bucket prosthesis can cause chafing and irritation to his lower extremities. Because of his lack of sensation, however, he may be unaware of the skin irritation which could lead to medical problems.

Adam is a sixth grader in public school in the Rochester City School District. He is

Elizabeth L. Schneider, Monroe County Legal Assistance Corp., Rochester, N.Y., for plaintiff.

Edward J. Orlando, Rochester, N.Y., for Bd. of Educ. of the Rochester City School Dist.

Seth Rockmuller, Albany, N.Y., for Commissioner and N.Y. State Educ. Dept.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Adam Holmes, commenced this action against Thomas Sobol, New York

classified as orthopedically impaired. He is enrolled in a regular classroom program. His special education program has consisted of adaptive physical education and "related services" of occupational therapy (twice per week for thirty minutes per session) and physical therapy (twice per week for thirty minutes per session). The primary goals of his IEP's have been to ambulate independently, to increase and maintain upper extremity strength, to improve awareness of his skin integrity and to achieve independence in the school setting.

Adam has participated in a summer program continuously since 1977. Prior to the summer of 1987, he received summer programming by petitioning the New York Family Court pursuant to § 236 of the New York Family Court Act, the state law then in effect relating to summer programming for handicapped children. However, pursuant to a 1986 amendment of the New York Education Law and the Family Court Act (1986 N.Y.Laws, Ch. 683) beginning with the summer of 1987, school district Committees on Special Education (CSE) are required to evaluate and determine each handicapped student's need for a twelve-month special education program and to provide such a program to those students whose handicapping condition is "severe enough to exhibit the need for a structured learning environment of twelve months duration to maintain developmental levels." N.Y.Educ.Law § 4402(2)(a) (1985, Supp. 1987).

The Rochester City School District's CSE met initially on June 9, 1987 to consider Adam's eligibility for twelve-month programming. At that time the CSE determined that for the summer of 1987 Adam's physical therapy program would *not* be continued because he did not meet the state's statutory criteria. Adam's mother requested an impartial hearing to review that decision. Pending that hearing, the parties negotiated an agreement so that Adam could attend summer programming during 1987.

The CSE met again on November 9, 1987, to reevaluate Adam's eligibility for twelve-month programming, *inter alia.*

The Committee decided that while Adam has physical therapy needs, his handicapping condition is not severe enough to warrant a structured learning environment for twelve months. Therefore, Adam would receive no physical therapy during the summer.

The impartial hearing requested by Adam's mother was held on December 10, 1987. Two certified physical therapists, Karen Scura and Jill Blass, testified on Adam's behalf. Two witnesses, Anne Rodgers, coordinating administrator at Adam's school and Christine Brady, Chairwoman of Adam's CSE sessions, testified on behalf of the District. Neither of the District's witnesses, however, had any training in physical therapy or any personal knowledge of Adam's physical therapy or overall educational needs.

Finding the testimony of Scura and Bloss "credible and relevant," the hearing officer rendered a decision on February 8, 1988, holding that Adam met the criteria for twelve-month programming under the New York Education Law. Therefore, the impartial hearing officer ordered that the District continue Adam's physical therapy program on a 12-month basis. The District appealed that determination to the New York State Commissioner of Education, who issued a decision on May 18, 1988 reversing the impartial hearing officer's determination, finding that Adam was not eligible under state law for continuation of his physical therapy program during the summer.

In his decision annulling the determination of the impartial hearing officer, the Commissioner found that Adam "receives special education in the form of adaptive physical education during the regular school year, for which the related service of physical therapy may also be appropriately provided." Commissioner's Decision at 3–4. He further found that the provision of physical therapy services alone during the summer "is not specifically related to an educational program." *Id.* at 3. Therefore, he concluded that under New York law and the EHA the District is not required to provide the "related service" of

physical therapy alone during the months of July and August. The Commissioner further concluded that "there is no evidence that the student needs a 'structured learning environment of twelve months duration to maintain developmental levels.'" *Id.* at 4.

## ADMINISTRATIVE HEARING

At the hearing on December 10, 1987, both Karen Scura and Jill Blass testified concerning Adam's need for twelve-month programming. Scura, a physical therapist employed with the District, had worked with Adam at school for 18 months at the time of the hearing. Bloss, a registered physical therapist currently employed by the Birth Defects Center of Strong Memorial Hospital, has known Adam since 1979. She worked with him for several years when he participated in a program operated by United Cerebral Palsy and currently evaluates him regularly at the Birth Defects Center.

The testimony by the therapists concerning Adam's current level of skill and the probable effect of a discontinuance of summer physical therapy on those skills is uncontradicted. Scura testified that Adam required summer programming for physical therapy to maintain his upper body strength and his current level of independent ambulation skills. She further opined that without summer therapy, Adam would lose 50% of his overall current level of independence in mobility and that it would take *four* or *five* months to recoup this loss. Bloss confirmed Scura's opinion that if Adam does not receive summer programming for physical therapy, he will experience significant regression in upper body strength and his ability to ambulate independently. She testified that it would take *two* to *four* months to recoup the skills Adam would lose.

Although there has not been much opportunity to observe evidence of regression since Adam has received a summer program of physical therapy continuously since 1977, both therapists have observed some evidence of regression during small breaks and when his therapy during the summer has been reduced. Moreover, in the absence of contrary expert testimony, I find no reason to doubt the accuracy of the opinions of plaintiff's experts.

Scura further stated that if Adam does not receive physical therapy on a twelve-month basis, his hip and shoulder strength will diminish and this will adversely affect his ability to do any type of fine motor activity.

Scura testified that although Adam's goal of independent ambulation is realistic, he has made only "minimal progress" toward that goal because he has not had enough time in physical therapy sessions. Bloss also testified that Adam has not made the progress he should have made to date—he should have been able to ambulate independently by third grade—and that every day is critically important to achieving his goal of independent ambulation because the opportunity for meeting that goal decreases as Adam grows older.

## FACTUAL FINDINGS

This court is required to base its decision on the preponderance of evidence. 20 U.S.C. § 1415(e)(2); *Board of Education of Henrick Hudson Central School District v. Rowley*, 458 U.S. 176, 205, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982).

Based on the testimony of plaintiff's experts, I find that plaintiff will experience severe regression in his upper body strength and his ambulation skills if he does not receive physical therapy this summer, and that it will require a significant amount of time to recoup these skills.

Based on the expert testimony, I also find that it is likely that Adam's ability to perform regular classwork and to function in the classroom without substantial assistance would be adversely affected to some extent if he does not receive summer therapy.

I further find that this regression/recoupment syndrome will most likely prevent Adam from making the amount of reasonable progress toward his goal of independent ambulation that might be ex-

pected of a student of his motivation, intelligence and ability.

## DISCUSSION

Before a preliminary injunction will issue in this circuit, the moving party must establish "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." *Hudson River Sloop Clearwater v. Dept. of Navy,* 836 F.2d 760, 763 (2d Cir.1988) quoting *Baker's Aid v. Hussmann Foodservice Co.,* 830 F.2d 13, 15 (2d Cir.1987).

### Irreparable Harm

■ The testimony of plaintiff's experts that Adam will lose a significant amount of upper body strength and experience serious regression in his progress toward his major goal of independent ambulation if he does not receive physical therapy this summer is undisputed. It is also undisputed that it will require two to five months to recoup such losses. Further, the time spent in recouping losses is time that is permanently lost to making progress toward timely meeting the goal of independent ambulation.

While I agree with defendants that it is important to evaluate the issue of irreparable harm in terms of plaintiff's overall educational program, I disagree that the impact of any regression on that program will be "minimal". The expert testimony indicates that, without summer physical therapy, Adam's hip and shoulder stability would diminish, and that in turn would affect his ability to do any sort of fine motor activity. Thus, he would also experience regression toward his goal of developing keyboarding skills as a compensatory strategy for visual motor weakness set forth in his 1987–88 IEP.

It is also reasonable to conclude that plaintiff's ability to perform activities that are an integral part of his regular classwork (e.g., holding books and other materials, and writing or typing) would be adversely affected and that this in turn would

have a negative impact on his academic performance. Ms. Rodgers conceded that during the last school year she received reports from plaintiff's teachers that he was having difficulties in his regular education classes because he was not completing his work on time.

Additionally, plaintiff must spend a significant amount of class time getting to and from classes. The impact on his overall educational program would be a great deal more than "minimal" should this time *increase* because of a diminution of his physical therapy program.

In light of the expert testimony that every day is critical to achieving plaintiff's goal of independent ambulation, I find that a recoupment period of two to five months, time that is permanently lost in the effort to timely achieve his goal to maximize independence in the school setting, is unacceptable. Accordingly, I conclude that plaintiff has met his burden of proving irreparable harm.

### Success on the Merits

■ The Supreme Court has established a two-step process for reviewing state decisions in suits brought under the EHA. First, the court must determine whether the state has complied with the procedural requirements of the Act. Second, it must determine whether the particular IEP is "reasonably calculated to enable the child to receive educational benefits." *Board of Education of Hendrick Hudson Central School District v. Rowley,* 458 U.S. 175, 206–207, 102 S.Ct. 3034, 3050–51, 73 L.Ed. 2d 690 (1982).

In the instant case, the answer to both inquiries is no. As discussed *infra,* the clear weight of authority holds that the EHA's procedural mandate of an impartial and independent state-level review prohibits an employee of the state educational agency, like the Commissioner, from conducting such a review. As to the second inquiry, the evidence of the severe regression that plaintiff will suffer in his physical developmental skill levels and the probable impact of the regression/recoupment syndrome on his overall learning process clear-

ly indicates that his IEP for only ten months of physical therapy does not provide sufficient support services to enable him to continue to receive adequate benefit from special and regular instruction.[1] The following discussion addresses these inquiries in reverse order.

For the purposes of this motion for a preliminary injunction, I have focused on specific legal issues of statutory interpretation raised by the parties. The major issues raised by plaintiff's motion are: (1) whether under New York law and the EHA plaintiff is entitled to receive "related services," such as physical therapy, as the only component of a "special education program" and, if so, whether plaintiff satisfies the criteria for eligibility for twelve-month programming under New York law, and (2) whether the Commissioner of Education may serve as an impartial review official of decisions made by local hearing officers.

### Definition of Special Education

█ At the center of controversy in this action is the definition of the "special education" that must be provided to each handicapped child in New York to ensure his right to a "free appropriate public education" guaranteed under the EHA. Under the Act's implementing regulations, "special education" is defined as "... specially designed instruction, at no cost to the parent, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." 34 C.F.R. § 300.14(a)(1) (1987). The federal regulations further provide that special education "... includes speech pathology, or any other related service, if the service consists of specially designed instruction, at no cost to the parents, ... and is considered 'special education' rather than a 'related service' under State standards." 34 C.F.R. § 300.14(a)(2). Therefore, it is necessary to look at state law to determine whether a

"related service," such as physical therapy, is considered to be "special education."

Under Section 4401 of the New York Education Law, "special education" is defined as "specially designed instruction *which includes* special services or programs as delineated in [§ 4401(2)], and transportation, to meet the individual educational needs of a child with a handicapping condition." N.Y.Educ.Law § 4401(1) (Consol.1985, Supp.1987) (emphasis added).

"Special services or programs" is defined to mean, *inter alia*, "[r]elated services which ... include audiology, counseling, occupational therapy, physical therapy ... and other appropriate support services." *Id.* § 4401(2)(k).

It is unclear whether the statutory language means that in order to be considered special education a program of instruction *must* include special services or programs, or whether it means merely that special services or programs alone are included in the definition.

While the statutory definition of special education is ambiguous, plaintiff makes a cogent argument that a literal reading of the Commissioner's own implementing regulations supports the latter proposition. Those regulations define "special education" to mean "specially designed individualized or group instruction *or* special services or programs, as defined in [§ 4401(2)] of the Education Law ... to meet the individual needs of pupils with handicapping conditions." 8 N.Y.C.R.R. § 200.1(hh) (1987) (emphasis added).

On the other hand, the Commissioner argues that a mere cross reference to special services and programs listed in § 4401(2) is not an "adequate" basis for resolving the issue, and that if one looks at certain regulatory provisions using "special education" and "related services," it is clear that there is a distinction between the terms.

A plain reading of section 200.1(hh) indicates not only that special services and

---

1. Because plaintiff has continually had summer physical therapy programming, the fact that he has achieved passing marks and advanced from grade to grade in his regular classes in the past is not dispositive of whether his current IEP for ten-month programming is reasonably calculated to provide educational benefits.

programs are included in the definition of "special education" by cross reference, but also that such services and programs are included alternatively to specially designed instruction. The provisions cited by the Commissioner do not provide a clear solution to the conflict. They do not indicate a regulatory scheme which clearly establishes that only certain special services and programs are deemed special education, while others, such as related services, are not. If that were so, it would appear that only those particular special services and programs would have been incorporated in the definition of "special education" set forth in Section 4401(1) and Section 200.-1(hh).

I am mindful of the admonition that the state's decision is entitled to some deference. *Rowley, supra; Karl v. Board of Education of Geneseo Central School District,* 736 F.2d 873 (2d Cir.1984). Nonetheless, given the plain language of the Commissioner's regulation defining the term "special education," I conclude that there is a likelihood that plaintiff will succeed on the merits of his claim that under New York law a handicapped child is entitled to receive related services as his or her sole special education program.

I furthermore conclude that plaintiff will likely succeed on the merits of his claim that he is eligible for twelve-month programming under state law. Section 4402 of the Education Law provides that each school district "shall be required to furnish suitable educational opportunities for children with handicapping conditions *by one of the special services or programs listed in [§ 4401(2)* ...]" N.Y.Educ.Law § 4402(2)(a) (Consol.1985, Supp.1987) (emphasis added). Beginning with the 1987–1988 school year, "with respect to the students whose handicapping conditions are severe enough to exhibit the need for a structured learning environment of twelve months duration to maintain developmental levels," each school district is required to provide "special services and programs as defined in [§ 4401] ... during the months of July and August as contained in the individualized education program for each eligible child ..." *Id.*

Since the Commissioner's decision does not set aside or even dispute the factual findings of the impartial hearing officer, I find no factual basis for the Commissioner's determination that there is "no evidence" that Adam needs a twelve-month program to maintain developmental levels. On the contrary, the expert testimony of record clearly establishes that his handicapping condition is severe enough that if he is not provided with a special program of physical therapy during the months of July and August he will experience severe regression in his physical developmental levels, which are especially important to the learning process in his case. Such regression will negatively impact the accomplishments he has made in at least four of the six annual goals of his 1987–88 IEP. While physical development is only one component of his special education program, it is a critically important one that cannot be ignored. It is not without significance that Adam has participated in summer programs for the past ten years. It is hard to imagine why Adam's need is any less now than it has been for the past ten years.

*Impartial Review*

The EHA sets forth specific procedural safeguards which must be accorded to handicapped children and their parents with respect to the provision of free appropriate public education by State and local educational agencies. Whenever parents have a complaint concerning any matter relating to their child's education, they are entitled to an impartial due process hearing which shall be conducted by the State educational agency, the local educational agency or an intermediate educational unit. 20 U.S.C. § 1415(b)(2). "No [such] hearing ... shall be conducted by an employee of such agency or unit involved in the education or care of the child." *Id.* If there is a two-tier review system, as is the case in New York, the EHA mandates that if the hearing is conducted by the local agency, any party may appeal to the State educational agency "which shall conduct an impartial review of such hearing. The officer conducting such review shall make an

independent decision upon completion of such review." *Id.* § 1415(c).

The federal statute and the regulations do not expressly prohibit officers assigned to conduct "impartial reviews" from being employees of the state educational agency. However, in light of the mandate that they be "impartial" and render an "independent" decision, and considering the objectives of the review process, the similarity of the responsibilities of hearing officers and reviewing officers, and the legislative history of the EHA, the vast majority of courts that have addressed the issue have held that employees of a state educational agency may *not* be appointed to conduct an impartial review. *See Muth v. Central Bucks School District*, 839 F.2d 113, 123 (3d Cir.1988); *Helms v. McDaniel*, 657 F.2d 800, 806 n. 9 (5th Cir.1981), *cert. denied*, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982); *Colin K. v. Schmidt*, 715 F.2d 1, 5 n. 3 (1st Cir.1983); *Robert M. v. Benton*, 634 F.2d 1139, 1142 (8th Cir.1980). *But cf Victoria L. v. District School Board*, 741 F.2d 369, 374 (11th Cir.1984); *Brandon E. v. Wisconsin Dept. of Public Instruction*, 595 F.Supp. 740, 746 (E.D.Wis.1984).

Thus, the question is whether the Commissioner is an employee of the State Department of Education for purposes of the EHA. I conclude that he is. The state defendants contend that the Commissioner is a "constitutional officer" and "not simply an employee of the department." The Constitution of New York State provides that the Department of Education shall be headed by The Regents of the University of the State of New York, "who shall appoint and at pleasure remove a commissioner of education to be the chief administrative officer of the department." N.Y. Const. Art. V, § 4. The Commissioner of Education is not a state official of cabinet rank appointed by the governor. By statute, *inter alia*, he is responsible for executing all educational policies, for general supervision of all educational schools and institutions and for advising and guiding school officers of all districts and cities concerning the general management of the schools under their control. N.Y.Educ.Law § 305(1), (2) (Consol.1985, 1987). Clearly,

he is directly involved in establishing and executing policies governing the education of handicapped children and, therefore, cannot be presumed to be impartial and independent in his review of decisions from local hearing officers. Consequently, I conclude that plaintiff is likely to succeed on the merits of his claim that the review conducted by the Commissioner violated his procedural due process rights under the EHA.

*Balance of Hardships*

In considering the hardships on the parties, the balance tips decidedly in favor of plaintiff. The evidence adduced during the administrative proceedings clearly establishes that if the special physical therapy program he receives during the regular school year is not continued during the summer, plaintiff will experience a serious setback in his progress toward several major goals of his IEP, which will adversely impact his overall educational program to some degree.

On the other hand, defendants have not presented any evidence, or even an argument, that they will suffer any hardship if the District is required to provide plaintiff physical therapy services twice per week during July and August as well as during the regular school year.

CONCLUSION

For the reasons stated above, I find that plaintiff has satisfied the requirements for issuance of a preliminary injunction, and, therefore, his motion is granted.

Therefore, it is hereby

ORDERED that defendants are hereby directed to continue providing plaintiff with physical therapy services during the months of July and August as required by his IEP, pending the final determination of this action; and it is further

ORDERED that since plaintiff is a poor person whose present action has been submitted *in forma pauperis*, he shall not be

required to provide security in connection with this preliminary injunction.