# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF CHANCE AARON NASH, by
DIANE NASH, Personal Representative,

        Plaintiff-Appellant,

v

CITY OF GRAND HAVEN,

        Defendant-Appellee.

FOR PUBLICATION
October 10, 2017
9:10 a.m.

No. 336907
Ottawa Circuit Court
LC No. 16-004454-NZ

Before: MURRAY, P.J., and SAWYER and MARKEY, JJ.

MARKEY, J.

Plaintiff Diane Nash, as personal representative of the Estate of Chance Aaron Nash, sought certain documents and information under the Michigan Freedom of Information Act (FOIA), MCL 15.231 *et seq*., from defendant, the city of Grand Haven. Following an *in camera* review of documents that the city claimed were subject to the attorney-client privilege and a bench trial related to 12 documents the trial court identified during its *in camera* review as requiring further explanation, the trial court ordered the city to produce some documents to plaintiff and ruled that others were exempt from disclosure because they were subject to the attorney-client privilege. The trial court concluded that plaintiff prevailed in part on her FOIA claim but was not entitled to attorney fees. Plaintiff now appeals by right. We affirm.

The instant case is one of a series of lawsuits related to the death of Chance Aaron Nash, who was involved in a fatal sledding accident on December 31, 2009, at Duncan Park in the city of Grand Haven. In the underlying tort litigation, plaintiff has sued the Duncan Park Commission, the Duncan Park Trustees, the individual trustees, and Duncan Park groundskeeper Robert DeHare.

Plaintiff's original FOIA request sought documents and information from the city related to the accident, the underlying tort litigation, Duncan Park, and the employment of DeHare. The city denied plaintiff's request in part, stating that it did not have information or documents related to DeHare's employment because he was not an employee of the city and that some information and records were exempt from disclosure pursuant to MCL 15.243(1)(g) because they were subject to attorney-client privilege. Plaintiff filed the instant FOIA lawsuit while the underlying tort litigation was still pending. Plaintiff's complaint alleged that the city "denied, in part, Plaintiff's request, claiming the documents in its possession were exempt from disclosure as

-1-

being subject to the attorney-client privilege" and that "[t]he requested public records are not exempt from disclosure and [the city] has arbitrarily and capriciously violated the FOIA." Plaintiff did not base her claim of a FOIA violation on any other ground.

On appeal, plaintiff first argues that the trial court erred by applying federal precedent regarding the common-interest doctrine of the attorney-client privilege. We disagree.

An appellate court "reviews de novo whether the trial court properly interpreted and applied FOIA." *ESPN, Inc v Mich State Univ*, 311 Mich App 662, 664; 876 NW2d 593 (2015). "Whether a public record is exempt from disclosure under the FOIA is a mixed question of fact and law, and we review the trial court's factual findings for clear error and review questions of law de novo." *Local Area Watch v Grand Rapids*, 262 Mich App 136, 142; 683 NW2d 745, 749 (2004) (quotation marks and citation omitted). Under the clear error standard of review, "the appellate court must defer to the trial court's view of the facts unless the appellate court is left with the definite and firm conviction that a mistake has been made by the trial court." *King v Oakland Co Prosecutor*, 303 Mich App 222, 225; 842 NW2d 403 (2013) (quotation marks and citation omitted). "Whether the attorney-client privilege applies to a communication is a question of law that we review de novo." *Krug v Ingham Co Sheriff's Office*, 264 Mich App 475, 484; 691 NW2d 50 (2004).

"Michigan courts have interpreted the policy of the FOIA as one of full disclosure of public records unless a legislatively created exemption expressly allows a state agency to avoid its duty to disclose the information." *Messenger v Consumer & Indus Servs*, 238 Mich App 524, 531; 606 NW2d 38 (1999). "Consistent with the FOIA's underlying policies, a public body is required to grant full disclosure of its records, unless they are specifically exempt under MCL 15.243." *Detroit Free Press, Inc v Southfield*, 269 Mich App 275, 281; 713 NW2d 28 (2005). "In construing the provisions of the act, [courts must] keep in mind that the FOIA is intended primarily as a prodisclosure statute and the exemptions to disclosure are to be narrowly construed." *Swickard v Wayne Co Med Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991). "Also, when a public body refuses to disclose a requested document under the act, and the requester sues to compel disclosure, the public agency bears the burden of proving that the refusal was justified under the act." *Id*. See also MCL 15.240(4). "When ruling whether an exemption under the FOIA prevents disclosure of particular documents, a trial court must make particularized findings of fact indicating why the claimed exemption is appropriate." *Messenger*, 238 Mich App at 532.

Section 13, MCL 15.243(1)(g), states as follows:

(1) A public body may exempt from disclosure as a public record under this act any of the following:

* * *

(g) Information or records subject to the attorney-client privilege.

"The attorney-client privilege attaches to communications made by a client to an attorney acting as a legal adviser and made for the purpose of obtaining legal advice." *Herald Co, Inc v Ann Arbor Pub Schs*, 224 Mich App 266, 279; 568 NW2d 411 (1997). "The attorney-client

privilege is designed to permit a client to confide in his attorney, knowing that his communications are safe from disclosure." *McCartney v Attorney General*, 231 Mich App 722, 730; 587 NW2d 824 (1998). "The scope of the privilege is narrow: it attaches only to confidential communications by the client to its advisor that are made for the purpose of obtaining legal advice." *Herald Co*, 224 Mich App at 279. "When the client is an organization, the privilege attaches to communications between the attorney and any employee or agent authorized to speak on its behalf in relation to the subject matter of the communication." *Krug*, 264 Mich App at 485 (quotation marks and citation omitted). Typically, "[o]nce otherwise privileged information is disclosed to a third party by the person who holds the privilege, or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears." *Leibel v Gen Motors Corp*, 250 Mich App 229, 242; 646 NW2d 179 (2002) (quotation marks and citation omitted; alteration in original).

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co v United States*, 449 US 383, 389; 101 S Ct 677; 66 L Ed 2d 584 (1981). This Court looks to federal precedent for guidance in determining the scope of the attorney-client privilege when a particular issue has been addressed by a federal court. See, e.g., *Leibel*, 250 Mich App at 236-237; *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 619-620; 576 NW2d 709 (1998).

Both the trial court, in its December 22, 2016 order, and the city on appeal relied on *United States v BDO Seidman, LLP*, 492 F3d 806, 814-817 (CA 7, 2007), in which the United States Court of Appeals for the Seventh Circuit outlined the application of the common-interest doctrine to the attorney-client privilege as follows:

Although it ultimately was not adopted by Congress, the rule of attorney-client privilege promulgated by the Supreme Court in 1972 as part of the Proposed Federal Rules of Evidence has been recognized "as a source of general guidance regarding federal common law principles." Proposed Rule 503 provided:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) *by him or his lawyer to a lawyer representing another in a matter of common interest*, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

Put simply, in order for the attorney-client privilege to attach, the communication in question must be made: (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship.

The purpose of the privilege is to "encourage full disclosure and to facilitate open communication between attorneys and their clients." Open communication assists lawyers in rendering legal advice, not only to represent their clients in ongoing litigation, but also to prevent litigation by advising clients to conform their conduct to the law and by addressing legal concerns that may inhibit clients from engaging in otherwise lawful and socially beneficial activities. The cost of these benefits is the withholding of relevant information from the courts.

Recognizing the inherent tension between the beneficial goals of the attorney-client privilege and the courts' right to every person's evidence, the courts have articulated the following principles to inform our analysis of the scope of the common interest doctrine:

(1) "[C]ourts construe the privilege to apply only where necessary to achieve its purpose."

(2) Only those communications which "reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance" fall within the privilege.

(3) Because one of the objectives of the privilege is assisting clients in conforming their conduct to the law, litigation need not be pending for the communication to be made in connection to the provision of legal services.

(4) Because "the privilege is in derogation of the search for truth," any exceptions to the requirements of the attorney-client privilege "must be strictly confined."

Although occasionally termed a privilege itself, the common interest doctrine is really an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person. In effect, the common interest doctrine extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances. For that reason, the common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise. Other than these limits, however, the common defense doctrine does not contract the attorney-client privilege. Thus, communications need not be made in anticipation of litigation to fall within the common interest doctrine. Applying the common interest doctrine to the full range of communications otherwise protected by the attorney-client privilege encourages parties with a shared legal interest to seek legal "assistance in order to meet legal requirements and to plan their conduct" accordingly. This planning serves the public interest by advancing compliance with the law, "facilitating the administration of justice" and averting

litigation. Reason and experience demonstrate that joint venturers, no less than individuals, benefit from planning their activities based on sound legal advice predicated upon open communication. [Citations omitted; emphasis added.]

In *Seidman*, the defendant accounting firm was involved in litigation with the IRS regarding potentially abusive tax shelters promoted by the accounting firm. *Id*. at 808. A lawyer for the accounting firm wrote a memorandum to outside tax counsel "requesting legal advice on pending IRS regulations," and a copy of the memorandum was also received by an attorney at a different law firm that did not represent the defendant accounting firm but serviced the same clients as the accounting firm "on the same or related matters." *Id*. at 813. The attorney at this law firm claimed that she received the memorandum from the accounting firm as input regarding tax shelters that the law firm was preparing for the accounting firm and their common clients. *Id*. at 813. The Seventh Circuit held that the lower court did not err by concluding that the memorandum at issue was within the scope of the common-interest doctrine and thus protected by attorney-client privilege. *Id*. at 814, 817. The *Seidman* Court reasoned that the accounting firm and law firm "shared a common legal interest 'in ensuring compliance with the new regulation issued by the IRS,' and in making sure that they could defend their product against potential IRS enforcement actions." *Id*. at 816 (citation omitted).

In *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 83-84; 862 NW2d 466 (2014), this Court applied the federal common-interest doctrine in the context of the work-product privilege. The *D'Alessandro* Court stated, "While courts in this state have not expressly addressed the so-called common-interest doctrine, several federal courts have concluded that the disclosure of work product to a third party does not result in a waiver if there is a reasonable expectation of confidentiality between the transferor . . . and the recipient . . . ." *Id*. at 82. This Court set forth the following explanation:

"A reasonable expectation of confidentiality may derive from common litigation interests between the disclosing party and the recipient . . . . [T]he existence of common interests between transferor and transferee is relevant to deciding whether the disclosure is consistent with the nature of the work product privilege. This is true because when common litigation interests are present, the transferee is not at all likely to disclose the work product material to the adversary." [*Id*. at 83, quoting *United States v Deloitte LLP*, 391 US App DC 318, 330 (2010) (alterations in original).]

The *D'Alessandro* Court noted that the "[f]ederal courts' application of the common-interest doctrine is instructive" because of the similarity between state and federal rules regarding the work-product privilege and "our courts routinely rely on federal cases for guidance in determining the scope of the work-product doctrine[.]" *Id*. at 84 (quotation marks and citation omitted).

We conclude that the common-interest doctrine should similarly be applied to the attorney-client privilege in Michigan. See *id.* See also *Leibel*, 250 Mich App at 236-237; *Reed Dairy Farm*, 227 Mich App at 619-620. Plaintiff's argument that the common-interest doctrine should not apply simply because there is no Michigan case directly on point is unavailing. The waiver concept operates similarly in both the attorney-client privilege and work-product

privilege contexts. *Leibel*, 250 Mich App at 248. It is also well established that this Court is free to adopt the analysis of a lower federal court "if it is persuasive and instructive." *Holman v Rasak*, 281 Mich App 507, 509; 761 NW2d 391 (2008).

In this case, even though the city was not named as a defendant in the underlying tort litigation, a primary issue in that litigation has been determining the ownership of Duncan Park and the nature of the city's relationship to Duncan Park. The park was created through a charitable trust for the benefit of Grand Haven and its people. At one point, the trial court in the underlying litigation ruled that the city held fee title to Duncan Park, although the trial court's order granting summary disposition on the ground of governmental immunity was subsequently reversed on appeal. *Nash v Duncan Park Comm*, 304 Mich App 599, 609-610, 636; 848 NW2d 435 (2014), judgment vacated in part, 497 Mich 1016 (2015). Because of the dispute over who owns Duncan Park, City Manager Patrick McGinnis believed that the city was involved in the lawsuits "on some level." The record reflects that the Duncan Park Commission was created by city ordinance, pursuant to the terms of the trust deed, to manage and control Duncan Park. The record also indicates that the city entered into a license agreement with the Duncan Park Commission in which the city agreed to extend liability insurance coverage through its insurance carrier to Duncan Park, the Duncan Park Commission, the Duncan Park Trust, and the trustees— i.e., the Duncan Park tort defendants—in exchange for the use of the park. The city was the principal insured on the policy. There was also evidence that Selective Insurance, the city's insurance carrier, hired attorney Cynthia Merry and her law firm as defense counsel to represent the Duncan Park tort defendants and the interests of the city as necessary throughout the underlying tort litigation. Furthermore, the city hired attorney Gregory Longworth to represent groundskeeper DeHare in the tort litigation. Longworth was an attorney at a law firm that had served as the city's general counsel previously.

Additionally, there was evidence that McGinnis was deposed repeatedly during the underlying tort litigation and that plaintiff sought to depose the mayor of Grand Haven, even though the city was not a party. Counsel for the city entered a limited appearance at one point in the underlying tort litigation on behalf of the city and its officials who were nonparties.

McGinnis also testified at the trial in the instant FOIA matter that the city acted in an "advisory capacity" for the tort defendants throughout that litigation because of the city's close connection to the facts of the case. As the tort litigation proceeded, McGinnis consulted with the city's attorneys and the attorneys representing the tort defendants to discuss litigation strategy and positions that the city might take in response to positions taken by plaintiff. McGinnis consulted with the city's attorneys to discuss possible issues of exposure for the city. McGinnis testified that the city had mutual interest in achieving a successful outcome in the tort litigation and that he believed that his communications with the various attorneys were confidential.

Therefore, the record supports the conclusion that the city shared with all of the defendants in the underlying tort action a common legal interest in matters related to the operation, use, maintenance, and protection of Duncan Park for the benefit of the people of Grand Haven and that the city and the tort defendants were involved in a joint effort to prevent or limit liability from attaching to the parties involved in the operation of Duncan Park. See *Seidman*, 492 F3d at 815-816 ("the common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest").

Our review of the documents at issue in light of the other record evidence supports the conclusion that Documents 2 and 8 were confidential communications between representatives of the city or the city's attorneys and the tort defendants or attorneys representing the tort defendants, with whom the city shared a common legal interest as previously noted, and that these communications were made for the purpose of obtaining legal advice and services related to the underlying tort litigation. The same is true of Documents 4 and 10, communications that also included a representative of Selective Insurance, which was the company that provided the city's insurance policy that had been extended to the Duncan Park Commission through the license agreement. The same is also true of Document 1, with the exception of the amount of the attorney billings contained in this communication. As the trial court also found, this information was not protected by privilege and was not exempt from disclosure; therefore, the trial court did not err by determining that these communications were protected by attorney-client privilege and that the privilege was not waived by disclosure to the city. *Krug*, 264 Mich App at 485; *Herald Co*, 224 Mich App at 279; *Seidman*, 492 F3d at 815-817.

Regarding the communication between the city and the Michigan Attorney General's Office, the city argued below that a shared interest was involved because the city's attorneys were directly involved in negotiating the reformation of the Duncan Park Trust that was sought in the probate court, and the city's fiduciary duties to the people of Grand Haven were aligned with the Attorney General's interests relating to the Duncan Park Trust. At the trial, counsel for the city further argued that the dynamics of the Duncan Park Trust reformation were part of the circumstances involved in the underlying tort litigation.

The petition for reformation that was submitted in the Ottawa County Probate Court[1] indicates that the Michigan Department of Attorney General is an interested party because it "[o]versees charitable trusts" and had executed a waiver of notice and consent. The petition also indicates that the trust needed to be reformed because the "governance structure of Duncan Park, as provided in the Deed, presents . . . conceptual difficulties" such as being open to the public as if publicly owned without providing governmental immunity for members of its governing body who in turn risk personal liability, potentially disqualifying Duncan Park from eligibility for certain funding that may only be directed to governmental and charitable entities, and requiring the city's involvement in Duncan Park without the transparency and accountability typically applicable to government bodies. The petition further stated that "Mrs. Duncan's intent to provide a public park with independent oversight for the perpetual benefit of the people of Grand Haven would be enhanced if the Deed is reformed" to make the city the sole trustee and allow the city to establish a governing board for Duncan Park by ordinance.

"In trust administration matters, the Attorney General constitutes a 'special party' under the Revised Probate Code," and "pursuant to the Supervision of Trustees for Charitable Purposes Act, the Attorney General is vested with jurisdiction and control to supervise and enforce

---

[1] We take judicial notice of these other court proceedings. See *Sturgis v Sturgis*, 302 Mich App 706, 712; 840 NW2d 408 (2013).

charitable trusts." *In re Estes Estate*, 207 Mich App 194, 202; 523 NW2d 863, 866 (1994) (Citations omitted). Furthermore, MCL 14.254 provides in pertinent part:

> (a) The attorney general shall have jurisdiction and control and shall represent the people of the state and the uncertain or indefinite beneficiaries in all charitable trusts in this state, and may enforce such trusts by proper proceedings in the courts of this state.

> (b) The attorney general is a necessary party to all court proceedings (1) to terminate a charitable trust or to liquidate or distribute its assets, or (2) to modify or depart from the objects or purposes of a charitable trust as the same are set forth in the instrument governing the trust, including any proceeding for the application of the doctrine of cy pres, or (3) to construe the provisions of an instrument with respect to a charitable trust. A judgment rendered in such proceedings without service of process and pleadings upon the attorney general, shall be voidable, unenforceable, and be set aside at the option of the attorney general upon his motion seeking such relief. The attorney general shall intervene in any proceedings affecting a charitable trust subject to this act, when requested to do so by the court having jurisdiction of the proceedings, and may intervene in any proceedings affecting a charitable trust when he determines that the public interest should be protected in such proceedings. *With respect to such proceedings, no compromise, settlement agreement, contract or judgment agreed to by any or all parties having or claiming to have an interest in any charitable trust shall be valid unless the attorney general was made a party to such proceedings and joined in the compromise, settlement agreement, contract or judgment, or unless the attorney general, in writing, waives his right to participate therein.* The attorney general is expressly authorized to enter into such compromise, settlement agreement, contract or judgment as in his opinion may be in the best interests of the people of the state and the uncertain or indefinite beneficiaries. [Emphasis added.]

Accordingly, the city's interest in protecting Duncan Park for the use of Grand Haven's citizens in accordance with the intent expressed in the trust deed are in alignment with the Attorney General's interests in representing the people of Michigan and uncertain or indefinite beneficiaries of charitable trusts: there was a common legal interest in ensuring that the trust was appropriately reformed to accomplish the expressed intent of the charitable trust. MCL 14.254(a) and (b); *Seidman*, 492 F3d at 815-816.

A review of Document 11 involving the communications between attorney Nicholas Curcio representing the city and Assistant Attorney General William Bloomfield supports the conclusion that these were confidential communications between these attorneys representing common legal interests made in connection with facilitating professional legal services related to reforming the Duncan Park Trust to protect those common interests. Therefore, the trial court did not err by determining that these communications were protected by attorney-client privilege. *Krug*, 264 Mich App at 485; *Herald Co*, 224 Mich App at 279; *Seidman*, 492 F3d at 815-816.

Documents 3, 5, 6, and 7 are not at issue for purposes of the attorney-client privilege issue because they had already been disclosed to plaintiff before the bench trial. Documents 9 and 12 are also not at issue on appeal because the trial court ruled that they were not subject to attorney-client privilege, so they were not exempt from disclosure.

With respect to the other documents the trial court reviewed *in camera* and which the trial court determined were subject to attorney-client privilege, we agree that all of those documents involved communications between representatives of the city and the city's attorneys related to legal advice about matters related to Duncan Park. Therefore, these documents were protected by attorney-client privilege. *Krug*, 264 Mich App at 485; *Herald Co*, 224 Mich App at 279.

Because attorney-client privilege applied to the challenged documents, they were exempt from disclosure. MCL 15.243(1)(g); *Detroit Free Press*, 269 Mich App at 281.

Next, plaintiff argues that MCL 15.240(6) does not grant the trial court discretion to determine that a plaintiff who prevails in part is not entitled to *any* attorney fees and that plaintiff is thus entitled to an appropriate portion of reasonable attorney fees. We disagree.

This Court "review[s] for an abuse of discretion an award of attorney fees to a prevailing plaintiff in an action under the FOIA" and reviews "a trial court's factual findings for clear error." *Prins v Mich State Police*, 299 Mich App 634, 641; 831 NW2d 867 (2013). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009) (quotation marks and citation omitted).

MCL 15.240(6) provides in pertinent part:

> If a person asserting the right to inspect, copy, or receive a copy of all or a portion of a public record prevails in an action commenced under this section, the court shall award reasonable attorneys' fees, costs, and disbursements. If the person or public body prevails in part, the court may, in its discretion, award all or an appropriate portion of reasonable attorneys' fees, costs, and disbursements . . . .

"A party has 'prevailed' under the FOIA if the prosecution of the action was necessary to and had a substantial causative effect on the delivery of or access to the documents." *Wilson v Eaton Rapids*, 196 Mich App 671, 673; 493 NW2d 433 (1992). "[I]f a plaintiff prevails completely in an action to compel disclosure under the FOIA, the circuit court must award reasonable attorney fees." *Prins*, 299 Mich App at 641. Nonetheless, "attorney fees and costs must be awarded under the first sentence of MCL 15.240(6) only when a party prevails completely," and "whether to award plaintiff reasonable attorney fees, costs, and disbursements when a party only partially prevails under the FOIA is entrusted to the sound discretion of the trial court." *Local Area Watch*, 262 Mich App at 150, 151.

The Court in *Local Area Watch* noted that because the plaintiff had not prevailed "on its central claim of access to executive (closed) session minutes," the trial court did not abuse its discretion by denying the plaintiff's request for reasonable attorney fees, costs, and disbursements and the defendants had acted reasonably even though the defendants had nonetheless violated FOIA by making some late disclosures. *Id*. at 151.

*Local Area Watch*, which was decided in 2004, is binding precedent, MCR 7.215(J), and there is no merit to the argument that a trial court cannot exercise its discretion to determine that a plaintiff that prevails only partially in a FOIA action is not entitled to any attorney fees. Plaintiff's reliance on *Rataj v Romulus*, 306 Mich App 735, 756; 858 NW2d 116 (2014), is unavailing because the *Rataj* Court merely held on the facts of that case that the partially prevailing plaintiff was entitled to an appropriate portion of his attorney fees, costs, and disbursements. This Court did not prohibit a trial court from determining in its discretion that an award of attorney fees is unwarranted. Plaintiff's reliance on *Bitterman v Village of Oakley*, 309 Mich App 53, 72-73; 868 NW2d 642 (2015), is misplaced for the same reason. Finally, plaintiff also relies on two decisions from this Court, *Dawkins v Dep't of Civil Serv*, 130 Mich App 669, 673-674; 344 NW2d 43 (1983), and *Booth Newspapers, Inc v Kalamazoo Sch Dist*, 181 Mich App 752; 450 NW2d 286 (1989), that are not binding because they were decided before November 1, 1990. MCR 7.215(J). Therefore, *Local Area Watch* articulates the governing rule.

In this case, the record supports the trial court's determination that plaintiff was not entitled to attorney fees. Plaintiff's success in this FOIA action was relatively minor when considering the volume of documents. Of the documents reviewed *in camera* by the trial court, the city was determined to have violated FOIA with respect to only eight pages of documents, two of which required redacting because the trial court only ordered the *amount* of the billed attorney fees to be disclosed.[2] This is a relatively inconsequential amount compared to the volume of documents submitted, and most of the documents over which the city claimed attorney-client privilege were determined to actually be privileged. In light of plaintiff's protracted litigation involving the Duncan Park accident, which included discovery requests directed at the city and its employees-- even though the city was not a defendant in those proceedings--, the trial court did not abuse its discretion by deciding that attorney fees were not warranted for plaintiff's relatively minor partial victory. *Local Area Watch*, 262 Mich App at

---

[2] Five other documents had already been disclosed to plaintiff, and the trial court thus did not make a ruling on these documents regarding the attorney-client privilege, although the trial court did rule that the city violated FOIA by disclosing one of those five documents late. Our statement that the city's FOIA violation constituted eight pages of documents includes this late-disclosed document, as well as the two documents and billing amounts that the trial court determined were not subject to the attorney-client privilege. It is unclear why these previously disclosed documents were in the packet of materials reviewed *in camera* if they had not been withheld, but counsel for the city indicated at the bench trial that these documents may have merely been attachments to the other e-mails that were submitted for *in camera* review. Counsel appeared to imply that these previously produced documents were inadvertently included with the materials that the city claimed were privileged.

150-151. Contrary to plaintiff's argument, the reasonableness of a defendant's actions is a proper consideration when the trial court is exercising its discretion to determine the appropriate attorney fees to award to a partially prevailing plaintiff. *Id*.

We affirm.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ David H. Sawyer