*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN RECORD COMPANY,

UNPUBLISHED
November 26, 2024
10:28 AM

Plaintiff-Appellant,

v

No. 367816
Saginaw Circuit Court
LC No. 22-046781-CZ

CHARTER TOWNSHIP OF SAGINAW,

Defendant-Appellee.

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

In this action seeking disclosure of redacted information under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*., plaintiff appeals by right the trial court's order granting partial summary disposition in defendant's favor under MCR 2.116(C)(10).[1]  For the reasons discussed below, we affirm in part and reverse in part.  In addition, because plaintiff partially prevailed in this appeal, we vacate the trial court's decision regarding attorney fees and costs, and remand for reconsideration of that issue.

## I.  BACKGROUND

Plaintiff's FOIA request concerns, in relevant part, a police report prepared during the investigation of the disappearance of Bruce Whelton, who "went missing in July 2006" and was declared legally dead in January 2012.  Defendant provided a mostly complete copy of the police report, with 14 redactions scattered across three pages.  Plaintiff challenged nine of those redactions.  For ease of reference, those three pages are set forth below:

---

[1] Because the trial court considered materials outside the pleadings, we treat the motion as having been brought and decided under MCR 2.116(C)(10).  See *Cary Investments LLC v Mt Pleasant*, 342 Mich App 304, 312-313; 994 NW2d 802 (2022).

| Saginaw Township Police Department | ORIGINAL DATE<br>Thu, Jul 06, 2006 | | INCIDENT NO.<br>718-0003424-06 (10) | |
|---|---|---|---|---|
| **ORIGINAL INCIDENT REPORT** | TIME RECEIVED<br>1643 | | FILE CLASS<br>99003 | |
| | WORK UNIT<br>PD SAGINAW TWP | | COUNTY<br>Saginaw | |
| COMPLAINANT<br>JILL ▮▮▮▮ WHELTON | | | TELEPHONE NO.<br>▮▮▮▮ | |
| ADDRESS: STREET AND NO.<br>▮▮▮▮▮▮▮ | | CITY<br>SAGINAW TWP | STATE<br>MI | ZIP CODE<br>- |
| INCIDENT STATUS<br>Open | | | | |

SOUTH DISTRICT

## MISSING PERSON-POSSIBLY SUICIDAL

**INFORMATION:**
I was dispatched to the below venue reference a missing subject, possibly suicidal. I met with the complainant, Jill Whelton and her father at the residence. Jill reports that she received a tx from her husband Bruce's employer (Meijer on Gratiot Road) this morning inquiring on his where abouts.

Jill told Meijers employee, Patty Robertson (Bruce's immediate boss) that he went into work early this morning, 0300 hours. This was not the case, Bruce had **not** been scheduled to work this morning. Bruce is a 26 year employee with Meijer.

— Redaction #1

Jill left the residence for a period of time to attend an interview noticing that the vehicle Bruce typically drives was parked next door at the neighbors. Jill stated that she thought Bruce parked there because he didn't want her to know that he was home. Jill told me that they are ▮▮▮▮▮▮▮ Bruce's mother passed away recently, his father previous to that, they ▮▮▮▮▮▮▮ been married for 22 years but, ▮▮▮▮▮▮▮




└— Redaction #2

Redaction #3
Jill discovered one note prior to my arrival in the back bedroom on top of a desk/leather file holder which contained the trust from his mother's death. It was written on a small white square piece of paper which read: Here's the whole mess. I just don't want to deal with it. While on scene Jill located a second note addressed to her which she located on the kitchen counter. See attached note.

Jill told me that Tom Harvey from Meijer (Tx- 781-6530) contacted her and indicated that Bruce had left some items at the store last night at approximately 1800 hours. I contacted Tom, he verified that I was in fact the Police prior to giving me any information. Tom stated that Bruce had left a letter addressed to Patty Robertson, his immediate supervisor in a interoffice envelope and put in the reference section "Hell's Canyon". See attached letter to Patty. Bruce also left both of his name tags, 1 large clip, his key ring with all of his work keys.

1/26/12 - Legally Deceased

| PAGE<br>1 of 2 | INVESTIGATED BY<br>OFF DIANE DARBY #016 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| Saginaw Township Police Department | ORIGINAL DATE<br>Thu, Jul 06, 2006 | INCIDENT NO.<br>718-0003424-06 (10) |
|---|---|---|
| **ORIGINAL INCIDENT REPORT** | TIME RECEIVED<br>1643 | FILE CLASS<br>99003 |

**ADDITIONAL:**
I requested that Central Dispatch put out a B.O.L. which they did immediately. Jill told me that Bruce is a hunter/fisherman. Jill's father had already checked Bruce's gun's in the basement and he told me that it didn't appear that any were missing. Jill stated that she discovered their older red 10 speed was missing from the garage. Jill believes that Bruce left riding that bike. Jill doesn't know what brand the bicycle is. I asked for areas that the family thought Bruce would have gone. The family members stated Oakwood cemetery where his parents are buried, the Shiawassee flats, the family farm (Frost/Graham). I assisted the family checking the possible township spots while Thomas Township checked the family farm and Saginaw County Sheriff Dept checked the Shiawassee flats.

**L.E.I.N.:**
I completed the L.E.I.N. entry form and faxed it to Central Dispatch to be entered.

**VENUE:**
SAGINAW COUNTY , SAGINAW TWP
▮▮▮▮▮▮▮ Redaction #4

**DATE & TIME:**
WED, JUL 05, 2006

**COMPLAINANT/WIFE OF MISSING:**
NAM: JILL ANN WHELTON

Redaction #5

**MISSING PERSON:**
NAM: BRUCE DOUGLAS WHELTON

Redaction #6

**EXTERNAL DOCUMENTS:**
Three letters left by Bruce

**STATUS:**
Open

| PAGE<br>2 of 2 | INVESTIGATED BY<br>OFF DIANE DARBY #016 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

SAGINAW TWP POLICE DEPT
NON-CRIMINAL

Report Date/Time: 6/2/2014 12:13:14 AM

Case No. 1471802035
Report No. 1471802035.1
Case Status ACTIVE

FILE CLASS/OFFENSE:
9954 - 99009 - Miscellaneous - Non-Criminal

NATURE OF INCIDENT:
99009/Petrie/ Missing Person Follow up/Masica/S

OCCURRED ON: 5/31/2014 7:43:00 PM
(and Between)

VENUE:
20 - Saginaw Twp Saginaw 6226 Normandy Dr

OTHER ENTITY: O1          TYPE (COMPLAINANT)   Complainant
NAM      Petrie, Mary        AGE              ETH
AKA                          DOB              RAC
NBR/STR                      SSN              SEX        FEMALE
CSZ                          HGT              OPS
TXH                          WGT              OPS State
TXW                          EYE              ALERT
CELL                         HAI

INTERVIEW OTHER ENTITY:

NARRATIVE:

Follow Up to case # 3424-06

Missing Person: Bruce Douglas Whelton, w/m, 7/24/61

Redaction #7          Redaction #8

On 5/31/14 at 19:43 hrs. I was given a message to tx. Mary Ellen Petrie in reference to a missing person, Bruce Whelton. I called her and she said that she believed that she may know where he is. She said she saw a male who looked like Bruce walking in the area but never thought anything more about it. Recently she again saw this same person but this time he was wearing a hooded sweat shirt so she couldn't see his face but was sure it was the same person she saw before and she is sure it is Bruce. She said she has known Bruce since he was 16 yrs. old. She said this person lives in an apartment building across from                          She didn't know the address but described the building as a darker brick building after two lighter brick buildings if you are traveling west on Normandy. Upon checking it is believed to be                          She said he lived in the corner apartment.
Redaction #9

Ms. Petrie said she could show someone which building and apartment it was and would be willing to speak with a detective if they wished to speak with her.

CASE STATUS:
ACTIVE

NetRMS_MSPCR.rtf
v2f                Reporting Officer: Sergeant William Masica

Page 1 of 1    Approved By: Sergeant Chad Brooks
               Date Approved: 6/2/2014 8:47:47 AM          Printed: June 2, 2014 - 8:49 AM

Defendant cited two statutory grounds for the redactions: some of the information was of a personal nature, the disclosure of which would constitute a clearly unwarranted invasion of privacy under MCL 15.243(1)(a), and some of the information was part of an investigative record for law enforcement purposes, the disclosure of which was exempt under MCL 15.243(1)(b). The trial court, after reviewing the unredacted report *in camera*, concluded that the information contained in Redaction Nos. 5 and 6 should be disclosed in part, limited to the portions of those redactions setting forth the race and sex of Whelton and his then-wife, because that information was already contained in unredacted form elsewhere in the report. Plaintiff does not challenge the remainder of Redaction Nos. 5 or 6 on appeal. The trial court determined that the remaining redacted information was of a personal nature because it consisted of addresses, telephone numbers, birthdates, or statements that would be considered private, confidential, intimate, or embarrassing. The trial court also declined to order disclosure of the remaining redacted information because the information would not shed light on the workings of government or how well the Saginaw Township Police handled the case. In light of plaintiff's de minimis victory and the trial court's conclusion that defendant acted reasonably in making the redactions, the trial court declined to award attorney fees or costs to plaintiff.

## II. STANDARDS OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). "A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of the complaint, with the trial court considering the entire record in a light most favorable to the nonmoving party." *LaFontaine Saline, Inc v*

*Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014). "A motion under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties fails to establish a genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008) (quotation marks, alteration, and citation omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023) (quotation marks and citation omitted).

Additionally, in FOIA cases, the trial court's legal determinations are reviewed de novo, and its factual determinations are reviewed for clear error. *Woodman v Dep't of Corrections*, 511 Mich 427, 439; 999 NW2d 463 (2023). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Nash Estate v Grand Haven*, 321 Mich App 587, 605; 909 NW2d 862 (2017) (quotation marks and citation omitted). Moreover, "[t]his Court reviews for an abuse of discretion an award of attorney fees to a prevailing plaintiff in an action under the FOIA and reviews a trial court's factual findings for clear error." *Id*. at 605 (quotation marks, brackets, and citation omitted). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). Further, questions of statutory interpretation are reviewed de novo. *Woodman*, 511 Mich at 440. "[T]his Court will affirm if the trial court reached the right result, even if for the wrong reason." *Comm for Marshall-Not the Megasite v City of Marshall*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369603); slip op at 23.

### III. FOIA AND THE DISCLOSURE EXEMPTIONS AT ISSUE

"FOIA is a statute intended to provide members of the public access to public records unless the Legislature enacted a statutory exemption to disclosure." *Woodman*, 511 Mich at 441. FOIA reflects a "public policy favoring public access to government information," so a public body is "required to disclose public records upon request unless those records are specifically exempt from disclosure under MCL 15.243." *Id*. at 441-442 (quotation marks and citation omitted). The purpose of FOIA "is to provide the people of this state with full and complete information regarding the government's affairs and the official actions of governmental officials and employees." *Practical Political Consulting v Secretary of State*, 287 Mich App 434, 462; 789 NW2d 178 (2010). The public's interest in governmental accountability will usually prevail over an individual's privacy interests, even regarding information that is personal or embarrassing. *Rataj v City of Romulus*, 306 Mich App 735, 751; 858 NW2d 116 (2014). Exemptions to disclosure must be narrowly construed, and the public body has the burden of proving that it was justified in withholding records. *Woodman*, 511 Mich at 441-442. Where "the Michigan exemptions created in the FOIA generally mirror the exemptions found in the federal FOIA," it is appropriate to consider federal caselaw for guidance. *Evening News Ass'n v City of Troy*, 417 Mich 481, 494-495; 339 NW2d 421 (1983).

Under MCL 15.243(1)(a), "[t]he Legislature determined that a public body 'may exempt' from FOIA's general disclosure requirement information that is 'of a personal nature' if the disclosure of the personal information would 'constitute a clearly unwarranted invasion of an individual's privacy.' " *ESPN, Inc v Mich State Univ*, 311 Mich App 662, 664; 876 NW2d 593

(2015), quoting MCL 15.243(1)(a). This exemption has two prongs: "[f]irst, the information must be 'of a personal nature,' " and, second, "disclosure of that information 'would constitute a clearly unwarranted invasion of an individual's privacy.' " *Mich Federation of Teachers & Sch Related Personnel, AFT, AFL-CIO v Univ of Mich*, 481 Mich 657, 675; 753 NW2d 28 (2008). The test to determine if information is of a personal nature is whether, under "the customs, mores, or ordinary views of the community," the information would reveal something embarrassing, intimate, private, or confidential about a person's personal or private life. *Id*. at 674-676 (quotation marks and citation omitted). Under the second prong, "[b]y providing that the invasion of privacy must be *clearly unwarranted*, the Legislature has unmistakably indicated that the intrusion must be more than slight, but a very significant one indeed." *Herald Co v Bay City*, 463 Mich 111, 126; 614 NW2d 873 (2000) (emphasis in original). The use to which the information will be put is irrelevant, but "it is necessary to ask whether the requested information would shed light on the governmental agency's conduct or further the core purposes of FOIA." *Rataj*, 306 Mich App at 751-752. "Requests for information on private citizens accumulated in government files that reveal little to nothing about the inner working of government will" generally constitute a clearly unwarranted invasion of privacy. *ESPN, Inc*, 311 Mich App at 669.

Under MCL 15.243(1)(b)(*iii*),[2] a public body may exempt from disclosure " '[i]nvestigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would,' " in relevant part, "constitute an unwarranted invasion of personal privacy." *Amberg v Dearborn*, 497 Mich 28, 32 n 2; 859 NW2d 674 (2014). This exemption does not expressly require "that the information be 'of a personal nature,' " but this Court has implied such a requirement. *Herald Co v Kalamazoo*, 229 Mich App 376, 388; 581 NW2d 295 (1998). Disclosure may be exempted under MCL 15.243(1)(b)(*iii*) if it would constitute an "unwarranted" invasion of privacy, a less stringent standard than the "clearly unwarranted" invasion of privacy required under MCL 15.243(1)(a). *Petersen v Charter Twp of Shelby*, unpublished per curiam opinion of the Court of Appeals, issued May 1, 2018 (Docket No. 336301), pp 8-9.[3] See also *Nat'l Archives and Records Admin v Favish*, 541 US 157, 165-166; 124 S Ct 1570; 158 L Ed 2d 319 (2004).[4]

---

[2] Defendant also asserted in the trial court that disclosure of the redacted information would deprive a person of the right to a fair trial, MCL 15.243(1)(b)(*ii*), but it failed to advance an argument that a person might be deprived of a fair trial. Defendant's FOIA compliance officer averred that disclosure could undermine further police investigations, but "could" is insufficient to invoke MCL 15.243(1)(b)(*i*), requiring that disclosure "would" do so. *King v Oakland Co Prosecutor*, 303 Mich App 222, 232; 842 NW2d 403 (2013). We therefore consider only MCL 15.243(1)(b)(*iii*).

[3] Unpublished opinions of this Court are not binding, but this Court may choose to adopt the reasoning in unpublished decisions as persuasive or instructive. *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, 345 Mich App 649, 666; 9 NW3d 104 (2023).

[4] Although there are some differences between the federal FOIA and Michigan's FOIA, we find *Favish* helpful to the extent it discussed the difference between "unwarranted" and "clearly unwarranted" in the federal FOIA. *Evening News*, 417 Mich at 494-495.

## IV. REDACTION NOS. 1, 2, AND 3

The trial court properly declined to order the disclosure of information contained in Redaction Nos. 1, 2, and 3.

The statements in Redaction Nos. 1, 2, and 3 involve, as the trial court recognized, "details of the Wheltons' home life and marital relationship." Whelton's wife disclosed intimate and private details regarding the affairs of the couple's household and marital life. An extensive body of caselaw reflects a longstanding societal belief that the information at issue is considered personal, private, embarrassing, and confidential. See, e.g., *People v Jensen*, 231 Mich App 439, 456; 586 NW2d 748 (1998) (recognizing the well-established "guarantee of personal privacy" regarding "activities relating to marriage, procreation, contraception, family relationships, and child rearing and education") (quotation marks and citation omitted). Accordingly, the information in Redaction Nos. 1, 2, and 3 is "of a personal nature."

Plaintiff argues that any conceivable privacy interest in the redacted information is no longer extant because Whelton is dead. Plaintiff relies on *Swickard v Wayne Co Med Examiner*, 438 Mich 536; 475 NW2d 304 (1991). *Swickard* is inapposite because Whelton's then-wife is not dead. In *Swickard*, our Supreme Court held that a person's common-law right to privacy, in the context of an action for invasion of privacy, does not survive the death of that person. *Id*. at 548-549. *Swickard* also held that a person's constitutional right to privacy likewise does not survive the death of that person. *Id*. at 554-556. The *Swickard* Court determined that the information at issue was not "information of a personal nature" to the family of the decedent. *Id*. at 557-558. But the Court did *not* hold that family members of a deceased person categorically have no privacy interest in information regarding a decedent. To the contrary, the Court determined that "relatives of deceased persons who are objects of publicity may not maintain actions for invasion of privacy *unless their own privacy is violated*." *Id*. at 553-554 (emphasis added). The family in that case had no privacy interest in the information at issue because "no private facts *concerning the family* would be revealed by the release of the information." *Id*. at 558 (emphasis added). Because Whelton's then-wife is still alive, and the information in Redaction Nos. 1, 2, and 3 would reveal intimate information about her, there is still a privacy interest in the information.

Whether disclosure would shed any light on the workings of government is a closer question. It is not possible to "hold our police officials accountable if we do not have the information upon which to evaluate their actions." *Rataj*, 306 Mich App at 751 (brackets, quotation marks, and citation omitted). Our Supreme Court has observed "that disclosure has been the consistent outcome where citizens seek to learn about government employees and their work," including "the manner in which public employees are fulfilling their public responsibilities." *Mager v Dep't of State Police*, 460 Mich 134, 142-143; 595 NW2d 142 (1999). Whether the redacted information would do so here is questionable. The weaker the "relationship between the personal information to be disclosed and the operations of our government," "the weaker is the case that disclosure should be made under the FOIA." *Herald Co v Bay City*, 463 Mich at 127. The marginal value of this information leads us to conclude that its disclosure would be "unwarranted" under MCL 15.243(1)(b)(*iii*). While the trial court did not base its decision on that exemption from disclosure, we affirm because it reached the correct result. *Comm for Marshall*, ___ Mich App at ___; slip op at 23.

## V. REDACTION NOS. 4 AND 7

The trial court properly declined to order the disclosure of the information contained in Redaction Nos. 4 and 7.

Redaction Nos. 4 and 7 pertain to an address. In particular, both involve the same address that defendant redacted near the top of the first page of its report *without objection* by plaintiff. The caselaw discussed above holds that personal addresses of private citizens are generally the type of information "of a personal nature" that may properly be withheld even under the stringent "clearly unwarranted" invasion of privacy standard. There are occasionally circumstances in which disclosure of such personal information is necessary to evaluate, for example, a university's execution of its policies. *ESPN, Inc*, 311 Mich App at 669-670. But, for the most part, addresses simply do not cast light on how well a public body is complying with its functions and obligations. E.g., *Mich Federation of Teachers*, 481 Mich at 681-682; *Rataj*, 306 Mich App at 754; *Stone Street Capital, Inc v Bureau of State Lottery*, 263 Mich App 683, 692-693; 689 NW2d 541 (2004); *Kocher v Dep't of Treasury*, 241 Mich App 378, 382-383; 615 NW2d 767 (2000).

Plaintiff's primary argument in support of disclosure is, essentially, that the address could easily be found electronically. However, the mere fact that information can be found elsewhere in the public sphere is irrelevant to whether it may be exempted from disclosure under one of the FOIA's privacy exemptions. *State News v Mich State Univ*, 481 Mich 692, 701 n 21; 753 NW2d 20 (2008). Addresses, birthdates, and telephone numbers are information of a personal nature, and nothing suggests that disclosure of the address listed in Redaction Nos. 4 and 7 would further the purposes of the FOIA.

Plaintiff also argues that addresses identifying the location of a crime are not exempt from disclosure under the FOIA. Pursuant to MCL 780.758(3)(a), which is part of the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*., "[t]he home address, home telephone number, work address, and work telephone number of the victim are exempt from disclosure under the [FOIA], unless the address is used to identify the place of the crime." *State News*, 481 Mich at 705 n 28. This statute falls short of an affirmative mandate requiring the disclosure of such addresses if a FOIA request is made. Rather, it merely provides that an address used to identify the location of a crime is excepted from an exemption to disclosure under the CVRA. Because defendant does not rely on the CVRA in support of any of its redactions, any argument regarding MCL 780.758(3)(a) is irrelevant. Moreover, because the address belongs to someone who has a privacy interest in the address, as discussed below, and because there is no suggestion that disclosure would shed light on the workings of government, Redaction Nos. 4 and 7 were proper under MCL 15.243(1)(a).

## VI. REDACTION NOS. 8 AND 9

The trial court erred by declining to order disclosure of the information contained in Redaction Nos. 8 and 9.

The information contained in Redaction Nos. 8 and 9 is subject to disclosure in part for the same reason that the trial court ordered partial disclosure of the information contained in Redaction Nos. 5 and 6: the same information was already provided in unredacted form elsewhere within the

same document. Specifically, the sentence between Redaction Nos. 8 and 9 clearly indicates that those redactions each pinpointed a location on "Normandy." The fact that the redacted information can be found elsewhere is not grounds for automatic disclosure. *State News*, 481 Mich at 701 n 21. But here, disclosure of the words "Normandy Dr." in Redaction Nos. 8 and 9 would not provide any information not already known from the redacted document itself.

Much the same can be said for the remainder of Redaction Nos. 8 and 9, given the information regarding the location at issue that is already disclosed in the unredacted portions of the document. Further, unlike the redacted addresses elsewhere in the document, neither Redaction No. 8 nor Redaction No. 9 contains a specific home address of any identifiable person. "[T]he right of privacy is personal." *Swickard*, 438 Mich at 553. An individual's *home* address is information of a personal nature. *Mich Federation of Teachers*, 481 Mich at 675-680. Our Supreme Court has emphasized that addresses might be disclosable under some circumstances, but it was "reluctant to disparage the privacy *of the home*, which is accorded special consideration in our Constitution, laws, and traditions." *Mager*, 460 Mich at 146 n 23 (quotation marks and citation omitted, emphasis added). Significantly, "information of a personal nature" must pertain to a particular person and to that person's own intimate conduct. *Mich Federation of Teachers*, 481 Mich at 669-671, 675-680. Defendant fails to explain how, under the circumstances presented here, the disclosure of the additional information regarding the location at issue would constitute an invasion of privacy sufficient to justify its redaction under FOIA. See *Woodman*, 511 Mich at 441-442 (explaining that FOIA "is intended primarily as a prodisclosure statute," its "exemptions to disclosure are to be narrowly construed," and "the public body bears the burden of proving that its decision to withhold the records was justified under FOIA") (quotation marks and citations omitted). The information contained in Redaction Nos. 8 and 9 must therefore be disclosed.

## VII. ATTORNEY FEES AND COSTS

"Whether to award [a] plaintiff reasonable attorney fees, costs, and disbursements when a party only partially prevails under the FOIA is entrusted to the sound discretion of the trial court." *Local Area Watch v Grand Rapids*, 262 Mich App 136, 151; 683 NW2d 745 (2004). If a plaintiff's success in a FOIA action is "relatively minor" and the defendant's conduct was reasonable, then a trial court does not abuse its discretion by declining to award attorney fees for such a "relatively minor partial victory." *Nash*, 321 Mich App at 606-608.

In the trial court, plaintiff obtained a minor partial victory. Plaintiff does not challenge, and has therefore abandoned, the trial court's finding that defendant acted reasonably in making the redactions. *Slater v Ann Arbor Pub Schs Bd of Ed*, 250 Mich App 419, 422 n 1; 648 NW2d 205 (2002). However, plaintiff has now obtained a greater, albeit still partial, victory. Therefore, we direct the trial court to reconsider in the first instance whether plaintiff's partial victory warrants reasonable attorney fees.

Accordingly, we reverse the trial court's decision upholding Redaction Nos. 8 and 9, vacate the trial court's decision regarding attorney fees and costs, and remand for reconsideration of the question of attorney fees and costs. In all other respects, we affirm. We do not retain jurisdiction.

The parties shall bear their own costs on appeal, neither party having prevailed in full. MCR 7.219(A).

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani